# EXHIBIT A

| | Original - Court | 2nd copy - Plaintiff |
|---|---|---|
| Approved, SCAO | 1st copy - Defendant | 3rd copy - Return |

| **STATE OF MICHIGAN** | | **CASE NO.** |
|---|---|---|
| **JUDICIAL DISTRICT** | **SUMMONS** | 2022-195889-NF |
| 6th **JUDICIAL CIRCUIT** | | |
| **COUNTY PROBATE** | | JUDGE RAE LEE CHABOT |

| Court address | Court telephone no. |
|---|---|
| 1200 N. Telegraph Rd., Pontiac, MI 48341 | 248-858-5248 |

| Plaintiff's name(s), address(es), and telephone no(s). | | Defendant's name(s), address(es), and telephone no(s). |
|---|---|---|
| MOON OVER WATER, LLC (Insured: J. Berger) | v | STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY Resident Agent: Corporation Service Company 2900 West Road, Suite 500 East Lansing, MI 48823 |

| Plaintiff's attorney, bar no., address, and telephone no. |
|---|
| Schefman & Associates, P.C. Bryan Schefman (P35435) 40900 Woodlward Ave., Ste. 111 Bloomfield Hills, MI 48304 248-594-2600 |

This case has been designated as an eFiling case, for more information please visit www.oakgov.com/efiling.

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (form MC 21). The summons section will be completed by the court clerk.

**Domestic Relations Case**
- ☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.
- ☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (form MC 21) listing those cases.
- ☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

**Civil Case**
- ☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.
- ☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).
- ☐ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.
- ☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in ☐ this court, ☐ _____ Court, where

it was given case number _____ and assigned to Judge _____

The action ☐ remains ☐ is no longer pending.

Summons section completed by court clerk. **SUMMONS**

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to file a **written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date | Expiration date* | Court clerk |
|---|---|---|
| 8/31/2022 | NOV 30 2022 | Lisa Brown |

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

MC 01 (9/19) **SUMMONS** MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105

FILED Received for Filing Oakland County Clerk 8/31/2022 12:29 PM

This case has been designated as an eFiling case, for more information please visit www.oakgov.com/efiling.

STATE OF MICHIGAN

IN THE COURT FOR THE COUNTY OF OAKLAND

MOON OVER WATER, LLC
(Insured: J. Berger),

Case No:  2022-195889-NF
HON.JUDGE RAE LEE CHABOT

Plaintiff,

VS.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

Defendant.

_____/

Bryan L. Schefman (P35435)
Kathlin Sorensen (P78969)
SCHEFMAN & ASSOCIATES, PC
*Attorneys for Plaintiff*
40900 Woodward Ave., Ste. 111
Bloomfield Hills, Michigan 48304
248-594-2600 phone
248-562-3225 fax
bryan@schefmanlaw.com
ksorensen@schefmanlaw.com

_____/

## **COMPLAINT**

*No civil action between these parties arising out of the transactions or occurrences alleged in the complaint has been previously filed in Michigan by this Plaintiff. It is believed that the insured may have their own claims pending in the State of Michigan.*

NOW COMES the Plaintiff, by and through counsel, Schefman & Associates, PC, and for its Complaint, states as follows:

FILED    Received for Filing    Oakland County Clerk    8/31/2022 12:29 PM

**Jurisdictional Allegations**

1. Plaintiff, Moon Over Water, LLC  is a nursing, attendant care, and adult foster care  service provider as defined in MCL 500.3157 which has a direct cause of action against an insurer to recover overdue benefits payable for charges for products, services, or accommodations provided to an injured person.

2. Defendant, State Farm Mutual Automobile Insurance Company ("State Farm") is authorized to do business in Michigan as no-fault insurance company and conducts a regular and systematic part of its business in Oakland County, Michigan, offering Personal Insurance Protection (PIP) benefits and uninsured motor vehicle coverage to residents and Plaintiff within the jurisdiction of this Circuit Court.

3. Venue is proper in this County inasmuch as the Defendant does business in Oakland County so that venue is properly laid pursuant to MCL 600.1629.

4. This matter is within the jurisdiction of this Court for the reason that the damages are in excess of the jurisdictional requirements of this Court, $25,000.00, exclusive of interest and costs.

**COUNT I**
**Breach of No-Fault Benefits Contract**

5. All paragraphs are incorporated as though fully set forth.

6. The Insured in this case, Ms. June Berger, had a policy of no-fault insurance underwritten by Defendant State Farm issued pursuant to the Michigan No-Fault Insurance Act (No-Fault Act), MCLA 500.3114 et seq., and is the no-fault benefits insurer in the highest order of priority under the provisions of a Michigan No-Fault Automobile Insurance for the insured.

2

7. The insured was involved in a collision that occurred before June 2019 and that satisfied the coverage terms of the no-fault policy then in effect, and as a direct and proximate result of the collision, the insured was rendered incapacitated and dependent on 24/7 attendant care services provided by Plaintiff.

8. Defendant State Farm had paid all claims according to the insured's contract, and without restrictions on the provider's charges other than reasonable charges related to her care, recovery, and rehabilitation from the date of the collision as invoiced, until September 1, 2021. The total of charges paid by State Farm was $900 per day, and had been paid by State Farm due to an increase of care needed in 2018 until benefits were wrongfully reduced, on September 1, 2021.

9. The insured's contract with State Farm is in the Defendant's possession and therefore need not be provided as an attachment to this Complaint.

10. The insured's physicians have prescribed in-home attendant care services.

11. On or about September 1, 2021, Defendant State Farm, acting through its claims adjuster, informed Plaintiff of State Farm's intent to breach the issued certificate of insurance coverage and deny vested benefits that it had contracted with the insured to provide, stating that it would no longer pay based on "reasonable charges," but would instead act in reliance on the amended no-fault statute, MCL 500.3157, paying 55% of charges for services, and asserting further that no billable Medicare fee schedule existed so that it was not obligated to pay 200% of Medicare CPT code fees.

3

12. The premiums paid by the insured before the date of loss had been priced and sold by State Farm based upon the fact that, in the event of catastrophic injury, said policy entitled each to the payment of reasonable charges for in-home attendant care services without regard to any fee caps or limitation, and further the insured was entitled to reimbursement for all reasonable charges for all reasonably necessary products, services, and accommodations for the care, recovery, or rehabilitation of the insured without regard to any government or private fee schedules.

13. As of that date of loss for the insured, the insured's rights had become fully vested and the terms of the insured's contract was inviolate.

14. Defendant State Farm's refusal to continue performance of the contract based upon the amended statute that by its terms is without retroactive application, and its repudiation of the existing vested contract to which it was bound, statutorily and constitutionally, constitutes an abrogation and breach of the contract.

15. State Farm is without just excuse as to its claimed right to upend and abrogate the contract and supplant the fully vested benefits of the insured's contract with new and below-market pricing, using a statute whose application in the revised MCL 500.3157 is prospective only and is without application to the charges of Plaintiff.

16. State Farm may not, by Michigan's Constitution, apply the statute in such a way that it may impair the contract between these parties, which, with any exercise of reasonable diligence, in so doing, State Farm knew or should have

4

known, that this change in the law cannot apply to Plaintiff's services and was an improper basis to terminate vested benefits.

17. As a direct and proximate result of the outrageous and baseless decisions of State Farm, the insured and this Plaintiff will be damaged in that each will incur liability for payment of the balance of charges for attendant care and adult foster care that is uncompensated by State Farm, and Plaintiff will incur costs beyond its reimbursements.

18. All invoices for services have been timely submitted but have not been paid on the basis of reasonable charges and are not expected to be paid based upon the formerly established reasonable charges.

19. Pursuant to section (2) of MCL 500.3142, if invoices have not been paid within 30 days after Defendant received reasonable proof of the fact and of the amount of loss sustained, all balances due bear simple interest at the rate of 12% per annum, and Defendant's repudiation of the contract has triggered this penalty.

20. Pursuant to MCLA 500.3148 (1) Plaintiff is entitled to attorney's fees as Defendant has unreasonably refused to honor its contract to pay the claims made.

**WHEREFORE**, Plaintiff prays for a Judgment against Defendant, of damages in whatever amount in excess of Twenty-Five Thousand Dollars ($25,000.00) it is deemed to be entitled by this Honorable Court and/or Jury together with costs, interest and attorney fees. Plaintiff further reserves the right to seek injunctive relief, ordering that Defendant apply the terms of the contract between the parties, without regard to the new no-fault statute, and

5

compel State Farm to pay for all reasonable charges for required attendant care services that are reasonably related to the care, recovery, and rehabilitation of the insured, and grant all other appropriate and equitable relief that the Court deems proper.

### COUNT II- The Fee Cap Limitation Does Not Apply to Plaintiff's Attendant and Adult Foster Care

21. All paragraphs are incorporated by reference as though fully set forth.

22. MCL 500.3107 requires an insurer to pay "Allowable expenses consisting of reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." This section has no specific limitation as to types of products, services, or accommodations, nor does it limit who may provide such services.

23. Plaintiff's attendant care and adult foster care are reasonably necessary for an injured person's care, since they provide life-sustaining assistance with activities of daily living such as bathing, grooming, dressing, ambulating, eating, transferring, and toileting for disabled individuals, either in the home or group home.

24. MCL 500.3157 imposes fee caps for "a physician, hospital, clinic, or other person that lawfully renders treatment to an injured person for an accidental bodily injury covered by personal protection insurance, or a person that provides rehabilitative occupational training following the injury." Note the limitation to specific persons rendering specific types of products, services, and accommodations, indicating "treatment" and "rehabilitative occupational training" in MCL 500.3157 are subsets of the

"reasonably necessary products, services, and accomodations" referenced in MCL 500.3107.

25. By all definitions, "treatment" is the use of medicine or surgery to address a patient's illness or injury; and "rehabilitative occupational training" restores the patient as closely as possible to the level of health and functioning the patient had before suffering illness or injury. As such, treatment and rehabilitative occupational training are distinctly different from attendant care and adult foster care.

26. Defendant's application of the fee caps is improper even under the application of the amended statute, inasmuch as Plaintiff's attendant care and adult foster care are neither "treatment" nor "rehabilitative occupational training."

27. MCL 500.3157(15)(k) states "'treatment" includes, but is not limited to, products, services, and accommodations,' meaning when a person renders treatment, all products, services, and accomodations used in the course of rendering the treatment are subject to the reimbursement limitations of MCL 500.3157.

28. The legislature did not define "treatment" as meaning "products, services, and accomodations" and as such, these different terms must be presumed to mean different things[1] and have different applications.

29. The term "treatment" may not be taken as encompassing all "products, services, and accommodations," since to make such an application would render the term "rehabilitative occupational training" found in MCL

---

[1] Antonin Scalia & Bryan A. Garner, Reading Law (2012), at 170.

500.3157 meaningless and surplusage, contrary to the presumption that the Court must adopt as to legislative purpose[2].

30. The plain language of the amended act leaves the inescapable conclusion there are some reasonably necessary products, services, and accommodations for an injured person's care, recovery, or rehabilitation that are neither treatment nor training and thus **not** subject to the reimbursement limitations (fee caps) of MCL 500.3157.

31. Attendant care and adult foster care provided by Plaintiff are neither treatment nor rehabilitative occupational training as specified in PA 21 of 2019.

32. Attendant care and adult foster care are distinctly different from treatment and rehabilitative occupational training and are not subject ot the fee caps of the amended act.

33. The reasonable charges" standard of 3107, and not the reimbursement limitations of 3157, apply to the charges of providers of attendant care and adult foster care, including Plaintiff.

34. As a direct and proximate result of the misapplication of the amended act MCL 500.3157 to the services provided by Plaintiff, and Defendant's failure to provide for payment of reasonable charges pursuant to MCL 500.3107, Plaintiff has incurred damages in excess of $25,000, and which totaled as of the date of the filing of this Complaint, $149,993.00.

**WHEREFORE**, Plaintiff prays for judgement in an amount in excess of $25,000.00, exclusive of interest and attorney fees.

---

[2] Scalia & Garner, supra note 1, at 174.

8

**COUNT III- MICHIGAN LAW DOES NOT ALLOW RETROACTIVE
APPLICATION OF MCL 500.3157(7) and (10)**

35. All paragraphs are incorporated by reference as though fully set forth.

36. Defendant State Farm is using the act improperly to alter its obligations, causing damages to this Plaintiff.

37. Statutes and statutory amendments are presumed to operate prospectively unless the Legislature manifests a clear, direct, and unequivocal as appears from the context of the statute itself.

38. The Legislature did not specifically express its intent that the 2019 statutory amendments be applied retroactively to substantively alter the respective rights and obligations of insured and insurers who contracted for benefits without respect to the 2019 statutory amendments and without any provision that future changes to the law would or might alter those rights and obligations.

39. These amendments may only be presumed to have prospective effect and cannot be applied to Plaintiff's claims for reasonable charges, to limit payments for attendant care.

40. On May 27, 2021, 73 Michigan legislators signed an affidavit declaring that "MCL 500.3157(7) and (10) should not be retroactively applied to accident victims who purchased insurance policies and sustained bodily injury prior to the enactment of this legislation." (**Exhibit 1**) The Legislators also stated "[w]e do not believe the Legislature intended for MCL 500.3157(7) and (10) to be applied retroactively." *Id*. The Legislators similarly stated their belief, consistent with Michigan law, that the "provisions are presumed to have only prospective application." *Id.* Finally, The Legislators noted the

9

fundamental unfairness to accident victims "who will lose valuable insurance benefits they have under automobile insurance policies they purchased and entered into many years ago, thereby materially altering their contracts of insurance." *Id*.

41. There is a presumption against retroactivity of legislation absent a contrary intent as expressed by the Legislature, which does not exist here, so the statutory amendments (e.g., MCL 500.3157(7), (10)) should not and cannot be applied retroactively to materially alter the insured's vested contract rights and in such a manner as to deprive Plaintiff its reasonable charges under MCL 500.3107.

**WHEREFORE**, Plaintiff respectfully requests this Honorable Court enter an Order declaring that Defendant must pay the reasonable charges of the Plaintiff for services rendered, and that Defendant may not rely on MCL 500.3157(7) and (10) to reduce payments on vested benefits retroactively. For the same reasons, Plaintiff respectfully requests this Honorable Court enter a money judgment in its favor for the full amount of attendant care and adult foster care benefits found due and owing at the time of judgment, along with interest and attorney fees as applicable, in an amount in excess of $25,000.00.

**COUNT IV:     UTPA VIOLATION AND BAD FAITH**

42. All paragraphs are incorporated by reference as though fully set forth.

43. This claim is brought pursuant to MCL 500.2006(1) et seq., which sets for the Uniform Trade Practices Act, as it relates to the sales of insurance and the payment of claims, which requires insurance policies to be sold without fraud or concealment, and for claims to be paid on a timely basis, and provides that

if they are not, penalty interest will be imposed under the UTPA at the rate of 12%.

44. Defendant's refusal to honor the unlimited terms of coverage for attendant care as underwritten, sold, and contracted, is a breach of the insurance contract and violates the Michigan Uniform Fair Trade Practices Act, MCL 500.2006(4).

45. As a direct and proximate result of the outrageous conduct of the Defendant, in abdicating its contractual responsibilities and in applying the new statute in a manner that clearly violates Michigan law and the Michigan Constitution, Plaintiff will be damaged as set forth above.

46. The decision to refuse to pay reasonable charges is made in bad faith, and is arbitrary, reckless, indifferent, demonstrating an intentional disregard of the interests of its insured, and is in violation of Defendant's implied duty to act in good faith, and constitutes a violation of the UTPA.

47. Defendant State Farm knew or should have known in the exercise of reasonable diligence, that it was not entitled to rely on the amended MCL 500.3157, inasmuch as the Michigan Constitution prohibits the application of laws in violation of contract rights, such that State Farm's action can only be described as having been made in bad faith, as arbitrary, reckless, and its actions were indifferently determined, and constitute an intentional act in disregard of the interests of its insured.

**WHEREFORE**, Plaintiff prays for a Judgment against Defendant, of damages in whatever amount in excess of Twenty-Five Thousand Dollars ($25,000.00) it is deemed to be entitled by this Honorable Court and/or Jury

together with costs, interest and attorney fees. Plaintiff further reserves the right to seek injunctive relief, ordering that Defendant apply the terms of the contract between the parties, without regard to the new no-fault statute, and compel State Farm to pay for all reasonable charges for required attendant care services that are reasonably related to the care, recovery, and rehabilitation of the insured, and grant all other appropriate and equitable relief that the Court deems proper.

**COUNT V: Tortious Bad Faith**
**Application of the New Statute Impairing a Vested Insurance Benefit**
**and**
**Using Unfair, Unconscionable, or Deceptive Methods, Acts, or Practices**
**in Conduct of Trade or Commerce**

48. All paragraphs are incorporated by reference herein as though fully set forth herein.

49. On May 25, 2019, the Michigan Legislature passed Enrolled Senate Bill No. 1 (hereinafter" SB 1") which was signed into law by Governor Whitmer on May 30, 2019. On June 4, 2019, the Legislature passed Enrolled House Bill No. 4397 (hereinafter "HB 4397"), which included some modifications and clarifications to SB 1, and was signed by Governor Whitmer on June 11, 2019.

50. On June 11, 2019, SB 1 and HB 4397 were filed with the Michigan Secretary of State's Office of the Great Seal and assigned Public Act number 21 of 2019 and Public Act number 22 of 2019 (hereinafter referred to as "PA 21" and "PA 22").

51. PA 21 and PA 22 enacted sweeping changes to the existing Michigan No-Fault Act (MCL 500.3101 et seq.), many of which went into effect on June 11, 2019. In some circumstances these changes purport to apply to persons injured in

motor vehicle accidents that occurred prior to June 11, 2019 whose contractual benefits had already vested, however Defendant State Farm seeks to use the cover of that statute as an opportunity to evade its contractual responsibilities to Plaintiff.

52. State Farm knew or should have known in the exercise of reasonable diligence, that it could not apply the new pricing limitations on attendant care and adult forster care to vested rights of injured motor vehicle accident victims, like the patient in this case, who was injured prior to June 11, 2019, since application of the new law to contracts whose benefits had already vested, would retroactively impair the contract rights of the Plaintiff and violate her rights under the Michigan Constitution.

53. The manner in which State Farm has unequivocally confirmed that it seeks to apply the provisions of PA 21 beginning on September 1, 2021, has changed the reimbursement for attendant care, disrupting and tortiously interfering in the patient's contract and constitutional rights.

54. The application of this limitation is a stark breach of the duty of good faith to its insured and stands in violation of the insurance contract and is unenforceable and should in the exercise of reasonable diligence have been known to be unenforceable as to this contract, and as such constitutes a tortious breach of duty to the insured committed in bad faith.

55. The Michigan Constitution prohibits laws that impair the obligation of contracts. Specifically, the Michigan Constitution states: "No ... law impairing the obligation of contract shall be enacted." Const 1963, art 1 10. Defendant knew or should have known in the exercise of reasonable diligence that such

13

was the case and breached its duty to the insured by co-opting a law that was not intended to and constitutionally could not disrupt existing, vested, contracts.

56. Those tortious actions by State Farm were undertaken in an arbitrary and capricious manner and constitute State Farm's tortious bad faith, in derogation of the rights of and obligations to its insured.

57. The premium paid by the patient for the aforesaid auto insurance policy with Defendant State Farm, was priced and sold based upon a risk that State Farm had assumed and priced into its risk assessment and State Farm has enjoyed the benefits of contributions to and payment by the Michigan Catastrophic Claim Fund, which renders its decision all the more incomprehensible and grievous and tortious.

58. State Farm's use and reliance upon the new Section 3157 divests this insured patient of their vested contract right, denies them the benefit of the premiums they paid to secure it, and, in the process, jeopardizes and diminishes their quality of care, all in violation of Michigan law and constitutes the tortious breach of its duty in honoring this insurance contract.

59. State Farm has no legitimate basis on which it could rely on the application of the amended 3157, and no basis on which it could justify its retroactive interference with the insured vested contractual rights, in that there is no credible evidence that the care required is unnecessary or otherwise inappropriate.

60. The means that State Farm chose to alter the contractual rights and obligations existing between its insured and Defendant State Farm are clearly

14

an unreasonable extension of the law of statutory interpretation, given that the section of the law on which State Farm relies does not set forth retroactive application as required to make it so.

61. For the reasons stated herein and otherwise, the attendant care limitations as State Farm seeks to apply and rely on in violation of the contract, as set forth in 3157, tortiously violate Defendant's duty to the insured, and should have been obvious to impair their constitutional contract rights under the Michigan Contracts Clause, Const 1963 Article 1 § 10, and impair their liberty interest as set forth in the Michigan Constitution Article 1 § 17, in being able to select and provide payment for attendant care and adult foster care that is most efficacious and beneficial for them in violation of their fundamental right to privacy and bodily integrity.

62. Defendant by its actions has breached the Michigan Consumer Protection Act, MCL445.903 et seq. in that Defendant's conduct is unlawful in the following particular subsections of that Act:

> (a)   Causing a probability of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services

> (c) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has sponsorship, approval, status, affiliation, or connection that he or she does not have.

> (e) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.

> (i) Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions.

15

(n) Causing a probability of confusion or of misunderstanding as to the legal rights, obligations, or remedies of a party to a transaction.

(r) Representing that a consumer will receive goods or services free or without charge, or using words of similar import in the representation, without clearly and conspicuously disclosing with equal prominence in immediate conjunction with the use of those words the conditions, terms, or prerequisites to the use or retention of the goods or services advertised.

(s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer.

(t) Entering into a consumer transaction in which the consumer waives or purports to waive a right, benefit, or immunity provided by law, unless the waiver is clearly stated and the consumer has specifically consented to it.

(u) Failing, in a consumer transaction that is rescinded, canceled, or otherwise terminated in accordance with the terms of an agreement, advertisement, representation, or provision of law, to promptly restore to the person or persons entitled to it a deposit, down payment, or other payment, or in the case of property traded in but not available, the greater of the agreed value or the fair market value of the property, or to cancel within a specified time or an otherwise reasonable time an acquired security interest.

(x) Taking advantage of the consumer's inability reasonably to protect his or her interests by reason of disability, illiteracy, or inability to understand the language of an agreement presented by the other party to the transaction who knows or reasonably should know of the consumer's inability.

(y) Gross discrepancies between the oral representations of the seller and the written agreement covering the same transaction or failure of the other party to the transaction to provide the promised benefits.

(aa) Causing coercion and duress as the result of the time and nature of a sales presentation.

(bb) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is.

(cc) Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

63. In each act and omission, Defendant has caused damages to the insured and to this Plaintiff, in an amount in excess of $25,000.00.

**WHEREFORE**, Plaintiff prays for a Judgment against Defendants, of damages in whatever amount in excess of Twenty-Five Thousand Dollars ($25,000.00) it is deemed to be entitled by this Honorable Court and/or Jury together with costs, interest and attorney fees.

### COUNT VI- Claim for Non-payment of Medicare billing codes should the No-fault fee cap be applied

64. Plaintiffs incorporate by reference all paragraphs.

65. The fee caps that went into effect September 2, 2021 states that a provider is eligible for payment or reimbursement up to "200% of the amount payable to the person for the treatment ... under Medicare." MCL 500.3157(2)(a). The Medicare rates used are --without regard to the limitations unrelated to the rates in the fee schedule. . . . MCL 500.3157(15)(f).

66. Under Section (2), a medical provider is entitled to receive reimbursement for its services up to an amount that is equal to 200% of the Medicare rate for the same service. MCL 500.3157.

67. Under Section 3157(2), Plaintiff is eligible for reimbursement up to 200% of the Medicare rates—while under Section 3157(7), Plaintiff would only receive reimbursement at a significant discount of the rate it normally receives—which would violate the terms of the Act and would be a financially devastating rate.

17

68. Medicare covers the in-home services that Plaintiff provides, and accordingly, Plaintiff's bills should be paid pursuant to Section 3157(2), not 3157(7).

69. Under Medicare, services are billed pursuant to the medical codes set forth in the Healthcare Common Procedure Coding System ("HCPCS").

70. The HCPCS provides a "standardized, national alpha-numeric coding system created and maintained by Medicare and used by Medicare, Medicaid, and commercial insurance plans to process claims." HCPCS codes are federally-approved medical billing codes posted by the Center for Medicare & Medicaid Services ("CMS") whereby Defendant is liable for payment of 200% of those allowed payments, based on the following:[3]

   a. Medicare pays for home health aides and nursing services as a prospective payment system (referred to as the "PPS") whereby home health agencies are in essence pre-paid for their services on a rolling periodic basis (currently, 30 days) based upon the cost of delivering the services set forth in the patient's treatment plan (referred to as the "Plan of Care"). .

   b. The Medicare statute (specifically, Section 1895(b)(3)(A) of the Social Security Act) expressly requires that: (1) The computation of a standard prospective payment amount that includes all costs for home health services covered and paid for on a reasonable cost basis, and that such amounts be initially based on the most recent audited cost report data available to the Secretary; and

---

[3] The HCPCS manual is also available electronically at:
www.cms.gov/Medicare/Coding/HCPCSReleaseCodeSets/Alpha-Numeric-HCPCS-Items/2017-Alpha-Numeric-HCPCSFile.html?DLPage=1&DLEntries=10&DLSort=0&DLSortDir=descending

(2) the standardized prospective payment amount be adjusted to account for the effects of case-mix and wage levels among home health agencies.

c. Section 1895(b)(3)(B) of the Act requires the standard prospective payment amounts be annually updated by the home health applicable percentage increase, and as a result, each year, a complicated analysis is performed, the result of which is an updated set of reimbursement rates issued by CMS.s

d. Home care services are reimbursable services under Medicare, and therefore, Plaintiff falls under Section 3157(2) of the amended No-Fault Act, not Section 3157(7).

71. Under 3157(15)(f), Medicare is defined as: "'Medicare' means fee for service payments under part A, B, or D of the federal Medicare program established under subchapter XVIII of the social security act, 42 USC 1395 to 1395, without regard to the limitations unrelated to the rates in the fee schedule such as limitation or supplemental payments related to utilization, readmissions, recaptures, bad debt adjustments, or sequestration."

72. The Michigan Department of Insurance and Financial Services ("DIFS") has determined that code G0156 is billable under Medicare and has determined that, "HCPC Level II Code G0156, with or without a modifier, has an amount payable under Medicare when it is billed on a prospective amount.

73. The new law assigns no such distinction, and defines what the "fee schedule" mean to include prospective payments:

Mich. Admin. Code R. 500.201 "**(h)** "Fee schedule" means, as applicable, the *Medicare fee schedule or prospective payment*

19

*system* in effect on March 1 of the service year in which the service is rendered and for the area in which the service was rendered.

74. MCL 500.3157(2)(a) makes no such distinction as to the amount payable under Medicare being a fee schedule or a prospective payment system; it states:

75. Plaintiff has provided skilled nursing attendant care services in the home setting, as described in Medicare billing code G0156. The Center for Medicare and Medicaid Services ("CMS"), the federal agency that administers Medicare, recognizes G0156 as the code for home health aide care, S5125 for attendant care, and T2048 for behavioral health, long term care residential; each code is payable.

76. Plaintiff is therefore entitled to be reimbursed pursuant to Section 3157(2), at 200% of Medicare.

    **WHEREFORE**, Plaintiff prays for a Judgment against Defendants, of damages in whatever amount in excess of Twenty-Five Thousand Dollars ($25,000.00) it is deemed to be entitled by this Honorable Court and/or Jury together with costs, interest and attorney fees.

### COUNT VII – Declaratory Relief

77. Plaintiffs incorporate by reference all paragraphs.

78. An actual controversy exists between Plaintiffs and Defendant.

79. The court must determine the following:

    a. The extent to which the new statute may be applied retroactively to impair the attendant care and adult foster care services payment agreements;

    b. other determinations, orders, and judgments necessary to fully adjudicate the rights of the parties.

20

**WHEREFORE**, Plaintiff requests a declaration of rights and an award of damages in whatever amount they are found to be entitled in excess of $25,000, plus interest, costs, and actual attorney fees.

Respectfully Submitted,
_____/s/Bryan Schefman_____
Bryan Schefman (P35435)
Kathlin Sorensen (P78969)
Schefman & Associates, PC
40900 Woodward Ave. Ste. 111
Bloomfield Hills, MI 48304
Dated: August 25, 2022          (248) 594-2600

21

STATE OF MICHIGAN

IN THE COURT FOR THE COUNTY OF OAKLAND

MOON OVER WATER, LLC
(Insured: J. Berger),

Case No: 22-195889-NF
HON. RAE LEE CHABOT

        Plaintiff,

VS.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

        Defendant.

_____/

Bryan L. Schefman (P35435)
Kathlin Sorensen (P78969)
SCHEFMAN & ASSOCIATES, PC
*Attorneys for Plaintiff*
40900 Woodward Ave., Ste. 111
Bloomfield Hills, Michigan 48304
248-594-2600 phone
248-562-3225 fax
bryan@schefmanlaw.com
ksorensen@schefmanlaw.com

_____/

**SUPPLEMENTAL EXHIBIT 1 TO PLAINTIFF'S COMPLAINT**

FILED   Received for Filing   Oakland County Clerk   8/31/2022 2:41 PM

# EXHIBIT 1

**To:**   To the Michigan Court of Appeals

**From:** Members of the Michigan Legislature

**Date:** May 27, 2021

**Re:**   *Ellen M. Andary, Philip Krueger, & Eisenhower Center, v. USAA Casualty Insurance Company and Citizens Insurance Company of America*

---

We, the undersigned lawmakers, sign this memo to express our strongly held belief that the attendant care limitations and the 55% fee schedule provisions of the recently enacted auto no-fault insurance reforms (Public Act 21 of 2019: MCL 500.3157(7) and (10)) should not be retroactively applied to accident victims who purchased insurance policies and sustained bodily injury prior to the enactment of this legislation.

As you know, this retroactivity question is presently pending in the Michigan Court of Appeals in the above-referenced legal case (Andary litigation).

Our colleagues, State Representatives Julie Brixie and Andrea Schroeder, are in the process of filing an amici curiae brief asking the Michigan Court of Appeals to rule that these specific provisions of the new no-fault law should not be given retroactive application. We support our colleagues' efforts to seek amici curiae status in this important case and agree with their position regarding the retroactivity issue. We support their efforts for the following reasons:

1. We do not believe the Legislature intended for MCL 500.3157(7) and (10) to be applied retroactively. Many of us voted on this legislation understanding that MCL 500.3157(7) and (10) would only be applied prospectively. Moreover, because there does not appear to be any specific language in this legislation which clearly states a legislative intent to apply these provisions retroactively to previously injured victims, we believe these provisions are presumed to have only prospective application.

2. We believe retroactive application of these provisions would be a violation of plaintiffs' legal rights, including but not limited to, the Contracts Clause of the Michigan Constitution (e.g., Const 1963, art 1, § 10) and case law preserving the sanctity of private contracts.

3. We believe that retroactive application of these specific provisions of the new no-fault law would be fundamentally unfair to survivors of catastrophic auto accidents, such as Ms. Andary and Mr. Krueger (i.e., the plaintiffs in this case). That is true for the thousands of other residents across our state who will lose valuable insurance benefits they have under automobile insurance policies they purchased and entered into many years ago, thereby materially altering their contracts of insurance.

Information that appears on the website of the Michigan Catastrophic Claims Association (MCCA), which can be accessed by clicking here, reflects that there are over 18,000 patients who were injured years ago whose care is funded by the MCCA. Nearly every one of these residents and their families would be severely impacted by retroactive application of these reforms.

Many of those catastrophically injured patients have, for years, been receiving attendant care rendered by family members and friends for many hours every day. If the 56 hour weekly attendant care limitations set forth in MCL 500.3157(10) are retroactively applied to those patients, their critically important daily care will be significantly disrupted.

Moreover, the retroactive application of the fee schedule provisions set forth in MCL 500.3157(7) will cause a number of medical provider businesses to either close their doors or otherwise discontinue services to those patients who sustained severe injuries many years ago. Therefore, such application will likely have a significant impact on an important part of Michigan's healthcare economy and seriously impact access to necessary care.

A number of those medical businesses render commercially provided in-home attendant care to auto accident victims who do not have family members who can render such care. Therefore, the closure of such businesses, coupled with the limitations on family provided attendant care, could create a dangerous shortage of critical in-home attendant care services for the patients who are most in need.

***In writing this memo we wish to emphasize the urgency of the current situation.*** The provisions dealing with attendant care and the 55% fee schedule will be put into effect by insurance companies on July 1, 2021. If those provisions are retroactively applied to victims injured before enactment of these provisions, a chaotic situation could rapidly develop. Many medical provider businesses are likely to close, catastrophically injured persons will suffer a significant disruption in their daily care, hundreds of jobs (or more) are likely to be lost, and our courts could be flooded with lawsuits seeking relief from the harsh consequences of retroactively applying these benefit reductions to Michigan citizens.

Therefore, we strongly urge the Michigan Appellate Courts to review these issues, pursuant to the amicus brief filed on behalf of the plaintiffs in the Andary litigation, as they are of great importance to the citizens of the State of Michigan.

Sincerely,

Julie Brixie
State Representative
69th District

Andrea Schroeder
State Representative
43rd District

Jim Runestad
State Senator
15th District

Winnie Brinks
State Senator
29th District

Jim Ananich
Senate Democratic Leader
27th District

Donna Lasinski
House Democratic Leader
52nd District

Phil Green
State Representative
84th District

Julie Rogers
State Representative
60th District

Cynthia A. Johnson
State Representative
5th District

RECEIVED by MCOA 5/27/2021 7:08:27 PM

Stephanie A. Young
State Representative
8th District

Jim Ellison
State Representative
26th District

Kara Hope
State Representative
67th District

Sarah Anthony
State Representative
68th District

Sherry Gay-Dagnogo
Fmr. State Representative
8th District

Cara Clemente
State Representative
14th District

Tenisha Yancey
State Representative
1st District

Bill Sowerby
State Representative
31st District

Yousef Rabhi
State Representative
53rd District

Rachel Hood
State Representative
76th District

Wendell Byrd
Fmr. State Representative
3rd District

Robert Wittenberg
Fmr. State Representative
27th District

Mary Cavanagh
State Representative
10th District

LaTanya Garrett
Fmr. State Representative
5th District

Nate Shannon
State Representative
25th District

Regina Weiss
State Representative
27th District

Curtis Hertel, Jr.
State Senator
23rd District

Ronnie Peterson
State Representative
54th District

Amos O'Neal
State Representative
95th District

Paul Wojno
State Senator
9th District

Tim Sneller
State Representative
50th District

Lori Stone
State Representative
28th District

Padma Kuppa
State Representative
41st District

David LaGrand
State Representative
75th District

RECEIVED by MCOA 5/27/2021 7:08:27 PM

John Chirkun
Fmr. State Representative
22nd District

Jim Haadsma
State Representative
62nd District

Jeremy Moss
State Senator
11th District

Tullio Liberati
State Representative
13th District

Kevin Coleman
State Representative
16th District

Marshall Bullock, II
State Senator
4th District

Frank Liberati
Fmr. State Representative
13th District

Shri Thanedar
State Representative
3rd District

Doug Wozniak
State Representative
36th District

Jewell Jones
State Representative
11th District

Erika Geiss
State Senator
6th District

Chris Greig
Fmr. House Democratic Leader
37th District

Samantha Steckloff
State Representative
37th District

Helena Scott
State Representative
7th District

Vanessa Guerra
Fmr. State Representative
95th District

Abe Aiyash
State Representative
4th District

Abdullah Hammoud
State Representative
15th District

Rosemary Bayer
State Senator
12th District

Ranjeev Puri
State Representative
21st District

Mallory McMorrow
State Senator
13th District

Christine Morse
State Representative
61st District

Darrin Camilleri
State Representative
23rd District

Kristy Pagan
Fmr. State Representative
21st District

Jeff Irwin
State Senator
18th District

RECEIVED by MCOA 5/27/2021 7:08:27 PM

Sean McCann
State Senator
20th District

Jon Hoadley
Fmr. State Representative
60th District

Felicia Brabec
State Representative
55th District

Sylvia A. Santana
State Senator
3rd District

Stephanie Chang
State Senator
1st District

Sheldon Neeley
Fmr. State Representative
34th District

Betty Jean Alexander
State Senator
5th District

Robert Bezotte
State Representative
47th District

Brian K. Elder
Fmr. State Representative
96th District

Cynthia Neeley
State Representative
34th District

Alex Garza
State Representative
37th District

Gary Howell
State Representative
82nd District

Dayna Polehanki
State Senator
7th District

Rebekah Warren
Fmr. State Representative
55th District

Kelly Breen
State Representative
38th District

Steve Marino
State Representative
24th District

RECEIVED by MCOA 5/27/2021 7:08:27 PM