UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MOON OVER WATER, LLC,

       Plaintiff,                         Case No. 2:22-cv-12361

                                         Magistrate Judge Kimberly G. Altman

v.

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY,

       Defendant.

_____/

**<u>OPINION AND ORDER</u>**
**<u>GRANTING IN PART AND DENYING IN PART</u>**
**<u>PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 20)</u>**
**<u>AND</u>**
**<u>GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION</u>**
**<u>FOR SUMMARY JUDGMENT (ECF No. 21)[1]</u>**

I.      Introduction

This is an insurance case. Plaintiff Moon Over Water, LLC (Moon Over

Water) is a Michigan-based nursing, attendant care, and adult foster care service

provider. Moon Over Water has sued State Farm Mutual Automobile Insurance

Company (State Farm), a no-fault insurance company authorized to do business in

---

[1] Upon review of the parties' papers, the undersigned deems this matter appropriate
for decision without oral argument. *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR
7.1(f)(2). Further, a notice of determination without oral argument was filed.
(ECF No. 33).

the state of Michigan, alleging that State Farm has failed to fully reimburse it for services rendered by Moon Over Water to State Farm's insured, June Berger (the insured), who sustained injuries that require constant attendant care.  (ECF No. 1-2).  Moon Over Water asserts claims for breach of contract (under the Michigan No-Fault Act), Uniform Trade Practices Act (UTPA) violations, tortious bad faith, Michigan Consumer Protection Act (MCPA) violations, and for declaratory relief. (*Id.*).

Under 28 U.S.C. § 636(c) the parties consented to the authority of the undersigned on November 9, 2022.  (ECF No. 14).  Before the Court are the parties' cross motions for summary judgment, (ECF Nos. 20, 21), which are fully briefed and supplemented, (ECF Nos. 27, 28, 30, 31), and ready for consideration.[2]

For the reasons that follow, summary judgment will be GRANTED to Moon Over Water on its breach of contract claim based on the Michigan No-Fault Act, and DENIED on its other claims based on independent torts, the UTPA, and the MCPA.  State Farm's motion for summary judgment will be DENIED on Moon Over Water's breach of contract claim, and GRANTED as to Moon Over Water's other claims.

---

[2] After the initial briefs were filed, the parties then conducted settlement negotiations before a district judge and a facilitator, which were not successful.

Finally, interest on Moon Over Water's breach of contract claim shall be awarded for the payments due for services rendered from November 2021 to June 2022 from the date Moon Over Water submitted supplemental bills on August 23, 2023, to the date they are paid. The parties shall submit a supplemental filing regarding interest, as described below.

## II.    Background

### A.    The Insured

Moon Over Water summarizes the past and current state of the insured as follows:

> On August 10, 1977 (the date of loss, "DOL"), [the insured] was an unwilling passenger in a fast-moving motor vehicle, being sexually assaulted by a man who was also a passenger. During what is believed to have been a traumatic assault occurring at high-speed, the driver of the vehicle lost control and struck a telephone pole causing the death of both men and catastrophically injuring [the insured]. [The insured] was in a coma following the accident for many months and suffered quadriplegia, traumatic brain injury with damage to her brain stem, severe fractures to her right femur, pelvis, hip, and both arms, and required several surgeries to repair an esophageal crush-injury; she often aspirates which causes frequent infections/bronchitis/pneumonia, and she requires a parenteral feeding tube and around the clock attendant care. [Moon Over Water] has provided attendant care services and all care necessary to support [the insured's] life all of which have been reasonably related to the care required as a result of the use of a motor vehicle as a motor vehicle. The services include attendant care, including feeding, bathing, grooming, suctioning trach, dressing, therapies, transferring, care coordination, transportation, room and board, and any other care that supports daily life.

(ECF No. 28, PageID.545).

3

Moon Over Water billed State Farm $900 per diem for the insured's care, (*id.*, PageID.546), until it began billing at a $515 per diem rate based on the fee cap amendment,[3] (ECF No. 30, PageID.643).  These facts do not appear to be in material dispute, other than State Farm contending that Moon Over Water did not provide some services that it billed for during the period in question, as discussed below.

In 2019, Michigan amended the No-Fault Act to cap the rates that facilities such as Moon Over Water could bill to no-fault insurers like State Farm.  This dispute concerns whether State Farm owes Moon Over Water the difference between the $900 per diem rate charged prior to the enactment of the fee cap amendment and the $515 per diem rate charged once State Farm began applying the fee cap amendment to the insured.

### B.    Billing Records and Evidence

State Farm disputes that it told Moon Over Water to charge a reduced amount from November 2021 to June 2022, in order to recoup the total, greater amount that Moon Over Water sought.  Citing its call log records, State Farm says

---

[3] The "fee cap amendment" refers to the implementation of certain fee schedules in M.C.L. § 500.3157, for Medicare-reimbursable and non-Medicare-reimbursable services, treatments, and products. This resulted in reduced insurance payments for those services, which according to State Farm applied to Moon Over Water's treatment for the insured.  Accordingly, State Farm reduced its payments to Moon Over Water by approximately 55% of the prior amounts billed.  (ECF No. 30-2, PageID.677).

4

that none of its employees ever told Moon Over Water what to charge and that no such conversation is documented.  (ECF No. 30, PageID.646 (citing ECF No. 30-2)).

The records show that in June 2021, there were three conversations regarding the no-fault reforms and how this would affect State Farm's reimbursements for Moon Over Water's services.  (ECF No. 30-2, PageID.687-688).  Moon Over Water expressed concern that the payments from State Farm would be reduced by the new law and that they should not be; at that time, State Farm was unable to confirm anything.  (*Id.*).  Up to that point, State Farm had been paying Moon Over Water $27,000 per month, although there had been issues regarding State Farm receiving bills from Moon Over Water on occasion.  (*Id.*, PageID.689-690).

According to an affidavit from Jean Wimsett (Wimsett), the owner of Moon Over Water, she was informed in September 2021, that the new no-fault law would impose a "reduced fee schedule" rate for Moon Over Water's services.  (ECF No. 28-1, PageID.571).  She says that Moon Over Water disagreed with this interpretation, but as directed by State Farm's adjuster, submitted reduced charges from November 2021 to June 2022, that were paid by State Farm in the amount billed.  (*Id.*, PageID.571-572).  State Farm's call log reflects three conversations with Moon Over Water in September 2021, but none corroborate Wimsett's

5

assertions.  (ECF No. 30-2, PageID.679-681).

On November 4, 2021, the following conversation is recorded on the call log

regarding State Farm beginning to reimburse Moon Over Water at a lower rate:

> Rec[']d TCF [Wimsett] at Moon over Water regarding residential fees
> for September.  I advised bill was being reviewed.  She stated she did
> not believe she was subject to the fee schedule, I advised since she is a
> residential facility I believed she was.  I stated once the bill was
> reviewed I would let her know.  She stated she may need to file suit if
> her bills are reduced.  I advised that was her option.

(*Id.*, PageID.678).

On November 9, 2021, the log shows that an adjustment was made to the

$900 per diem rate as follows: $900/day x 55% = $495 + 4.11% = $516.78/day.

(*Id.*, PageID.677).  The note also reflects concern with the "extremely high charge

being submitted from Moon over Water" and says that "it is unclear how $900/day

is a reasonable rate."  (*Id.*).

The next day, November 10, 2021, a State Farm adjuster spoke to Moon

Over Water regarding the rate adjustment and what was included in Moon Over

Water's fee.  (*Id.*, PageID.676-677).  The State Farm adjuster said that she would

"review with management to determine if we would continue to consider the care

provided as residential or if it would be more appropriate to consider a monthly

rate for rent with additional attendant care considerations."  (*Id.*).

Analyses on November 11 and 24, 2021, show that State Farm considered

the services Moon Over Water provided and did not adjust the $900 per diem rate

other than applying the new fee schedule pricing, which was changed to "$900 x 55% = $495 x 1.0411% = $515.34" per day.  (*Id.*, PageID.672-676).  In December 2021, the analyses were reviewed and found to be reasonable.  (*Id.*, PageID.671).

Moon Over Water says that it billed State Farm the full amount for September 2021, ($27,000, ECF No. 28-3), and the reduced amount for October 2021, ($15,460, ECF No. 28-4), but that both bills were paid only in the reduced amount, (ECF No. 28-5).  Then, during the course of litigation, State Farm provided additional payments for each of those months, bringing the totals to Moon Over Water's full per diem rate.  (ECF No. 28-6).  Thus, Moon Over Water says that its billing of reduced amounts from November 2021 to June 2022 could also have been paid in the full amount by State Farm, had it not, in its opinion, wrongly applied the no-fault changes retroactively.  (ECF No. 28, PageID.547-548).

State Farm responds that its records show October 2021 was billed by Moon Over Water in the full amount of $27,000, as reflected in call log notes, (ECF No. 30-2, PageID.678), and a November 24, 2021 Explanation of Review, (ECF No. 21-3, PageID.415).  Based on State Farm's records, it paid Moon Over Water's bills in full for both months and going forward.

### III.    Parties' Arguments

#### A.    Initial Disputes

Moon Over Water initially presented three questions to the Court: whether (1) amendments to the Michigan No-Fault Act, including the imposition of fee caps, apply retroactively, *i.e.*, to services where the injury occurred before the amendments; (2) the fee caps under the amendments apply to the attendant care services Moon Over Water has been providing to the insured, and (3) Moon Over Water is entitled to penalty interest.[4]  (ECF No. 20).  Moon Over Water relied on the Michigan Court of Appeals' ruling in *Andary by & through Andary v. USAA Cas. Ins. Co.*, 343 Mich. App. 1 (2022) that the fee cap amounts did not apply to the insured in that case, who was injured *prior* to the fee cap amendment to the Michigan No-Fault Act.  (*Id.*).  State Farm argued that this case was wrongly decided and likely to be overturned by the Michigan Supreme Court.  (ECF No. 21).

While this case was pending, on July 31, 2023, the Michigan Supreme Court ruled in *Andary v. USAA Cas. Ins. Co.*, 512 Mich. 207 (2023), that insureds who were injured prior to the statute's amendments were entitled to pre-amendment benefit amounts thereby affirming the appellate court's decision.  Thus, the parties agree that State Farm's argument as to *Andary* is now moot.

### B.    Current Disputes

---

[4] Moon Over Water also argued that State Farm had not fully paid a subcontractor, Brightstar, for services rendered.  This issue is now moot, as State Farm has repaid Moon Over Water for payments made to Brightstar in full.  (ECF No. 28).

In light of the above, State Farm shifted its argument, now saying that it is not liable because it has paid all of Moon Over Water's bills in full on behalf of the insured.  (ECF No. 30).  In other words, it argues that Moon Over Water cannot recover as a matter of law on its breach of contract claim, which is premised on Michigan's No-Fault Act.  State Farm also argues that the claims based on UTPA and MCPA violations, bad faith, and tortious bad faith are prohibited when premised on the non-payment of no-fault benefits, which are governed solely by the Michigan No-Fault Act.  (*Id.*).

In Moon Over Water's supplemental brief in support of its motion for summary judgment, which speaks to its no-fault claim, it says that the State Farm adjuster advised it to submit healthcare reimbursement forms (called HCFA forms) for the *capped* amount in order to be paid.  (ECF No. 27, PageID.482).  Moon Over Water did so, and from November 2021 through June 2022, only received the smaller, capped amount from State Farm.  (*Id.*).  Later in the course of litigation, Moon Over Water submitted additional HCFA forms for the additional amounts owed, but received no additional payments.  (*Id.*).  Moon Over Water says that the following bills remain unpaid in part or full, including payments for services rendered in September and October 2023 that have not been paid at all:

| Month | Year | DOS | HCFA Submitted | Billed ($900 a day) | SF Paid | Date Paid | Owed |
|-------|------|-----|----------------|---------------------|---------|-----------|------|
| Nov. | 2021 | 11/1/21-11/30/21 | 12/1/21 | 27000 | $15,460.20 | 12/9/21 | 11,539.80 |
| Dec. | 2022 | 12/1/21-12/31/21 | 1/1/22 | 27900 | $15,975.54 | 1/1/22 | 11,924.46 |
| Jan. | 2022 | 1/1/22-1/31/22 | 2/1/22 | 27900 | $15,975.54 | 2/16/22 | 11,924.46 |
| Feb. | 2022 | 2/1/22-2/28/22 | 3/1/22 | 25200 | $14,420.00 | 4/1/22 | 10,420.00 |
| March | 2022 | 3/1/22-3/31/22 | 4/1/22 | 27900 | $15,965.00 | 5/11/22 | 11,935.00 |
| Apr. | 2022 | 4/1/22-4/30/22 | 5/1/22 | 27000 | $15,450.00 | 5/19/22 | 11,550.00 |
| May | 2022 | 5/1/22-5/31/22 | 6/1/22 | 27900 | $15,965.00 | 6/20/22 | 11,935.00 |
| June | 2022 | 6/1/22-6/30/22 | 7/1/22 | 27000 | $15,450.00 | 7/13/22 | 11,550.00 |
| Sept. | 2023 | 9/1/23-9/30/23 | 10/1/23 | 27000 | | | 27,000.00 |
| Oct. | 2023 | 10/1/23-10/31/23 | 11/01/23 | 27900 | | | 27,900.00 |

(*Id.*, PageID.484).

Moon Over Water contends that State Farm wrongly considers itself to have fully paid what it owes. This is based on Moon Over Water submitting bills for partial payments as instructed by the State Farm adjuster. *See* ECF No. 27, PageID.494-496, Affidavit of Jean Wimsett, Owner of Moon Over Water.

In response, State Farm disputes that it told Moon Over Water what to charge for services from November 2021 to June 2022. It also says that this is not a material fact because even if it had done so, State Farm does not owe Moon Over Water the additional amounts. This is because Moon Over Water had no *reasonable reliance* in charging less than it believed it was owed. State Farm also says that the sole remedy for any dispute over payments is found in the Michigan No-Fault Act. Furthermore, State Farm contends that Moon Over Water charged for services that were not performed, there is no evidence the insured incurred those charges, and Moon Over Water is not entitled to No-Fault interest or attorneys' fees. (ECF No. 30). These claims will be analyzed below.

IV.     Standard of Review

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the case under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ."  *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotation marks omitted); cf. Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.' "  *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

V.     Analysis

Moon Over Water seeks recovery for the following claims: breach of

11

contract (governed by the Michigan No-Fault Act), violation of the UTPA and bad faith, tortious bad faith, and violation of the MCPA. (ECF No. 1-1). State Farm argues that the Michigan No-Fault Act provides the exclusive remedy for Moon Over Water's claims and that Moon Over Water is not entitled to summary judgment on that claim. Each claim is addressed in turn below.

### A. No-Fault Claim – Breach of Contract

#### 1. Payment of Bills – Reduced Rate

State Farm contends that it is entitled to summary judgment because there is no genuine issue of material fact that it paid the bills from Moon Over Water for November 2021 to June 2022, in the full amounts they were billed. Moon Over Water says that this defense is unfair and "appalling" because "the adjuster instructed [Moon Over Water] to bill this way post no-fault amendment to get reimbursed at all[,] and [State Farm] had been aware of the disputed amounts claimed due at the time [Moon Over Water] was instructed to submit partial HCFAs[.]" (ECF No. 27, PageID.482). This is in essence a claim of reasonable reliance on State Farm's instructions to submit reduced bills in light of the change in the no-fault law. State Farm denies that any adjuster instructed Moon Over Water to send reduced bills, and argues that even if one had, Moon Over Water did not reasonably rely on such a statement.

#### 2. The Record

The parties dispute whether a State Farm representative told Moon Over Water to submit reduced bills from November 2021 to June 2022, which Wimsett states in her affidavit that she was instructed to do in September 2021.  (ECF No. 28-1).  In support, Moon Over Water has attached an HCFA form from November 1, 2021, for the month of October 2021, in which she billed State Farm $15,965. (ECF No. 28-4).  As noted above, State Farm disputes the accuracy of this document, attaching an Explanation of Review dated November 23, 2021, for the month of October that says the total submitted charges for October were $27,900. (ECF No. 21-3, PageID.415).  Further, State Farm notes that its call log report does not reflect any discussion of a rate reduction in September 2021, and shows that the new allowable billing rate of approximately $515 per diem was adopted on November 24, 2021.  (ECF No. 30-2, PageID.672-673).

Even if the record is somewhat conflicting as to billing, it is undisputed that from November 2021 to June 2022, Moon Over Water submitted bills that were reduced from its former $900 per diem rate to a $515 rate.  (*Id.*, PageID.416-423). This corroborates the evidence that Moon Over Water was instructed to bill in this manner.  State Farm says the reduced billing was based on Moon Over Water's misunderstanding of billing practices under the Michigan No-Fault Act, but it is clear that Moon Over Water never believed the Michigan No-Fault Act to apply retroactively to the insured.  *See, e.g.*, ECF No. 30-2, PageID.678 (November 4,

2021 conversation between Moon Over Water and State Farm).  In that conversation, Moon Over Water's owner said "she did not believe she was subject to the [adjusted] fee schedule."  *Id.*  State Farm advised that it believed she was, and she responded that she "may need to file suit if her bills are reduced."  *Id.*  Therefore, there is little reason to believe that Moon Over Water reduced its bills from November 2021 to June 2022, for any reason other than State Farm holding out that it would only pay bills charged at the reduced rate.

Furthermore, State Farm's call log does not prove that no such conversation took place in September 2021.  The log reflects that the owner of Moon Over Water spoke to State Farm adjusters on three occasions in September 2021.  (*Id.*, PageID.679-681).  She spoke with a different State Farm adjuster on each call. (*Id.*).  Each call is summarized with a very brief note regarding the topic of the call. (*Id.*).  State Farm has not presented affidavits of any of the adjusters to show that a billing reduction was not discussed.  Moon Over Water, on the other hand, attests through its owner that this discussion did occur.  Whether the conversation occurred in September 2021, or November 2021, as the call log indicates might be more likely, is not material.  Based on the record, it cannot be said as a matter of law that no one at State Farm instructed Moon Over Water to submit reduced bills based on changes to the Michigan No-Fault Act.  Therefore, the Court must determine whether Moon Over Water acted in reasonable reliance on an instruction

14

to submit reduced bills.

### 3.    Reasonable Reliance

Reasonable, or justifiable, reliance is required to assert equitable or promissory estoppel under Michigan law. *Cincinnati Ins. Co. v. Citizens Ins. Co.*, 454 Mich. 263 (1997).  Beyond that, a party must also show a misrepresentation by the party against whom estoppel is asserted and a detriment to the party asserting estoppel. *Premo v. United States*, 599 F.3d 540, 547 (6th Cir. 2010).

In *Cincinnati Ins. Co.*, the Michigan Supreme Court found that the defendant was estopped from asserting a statute of limitations defense based on its representation that the plaintiff's subrogation claim would be processed without difficulty at a later date because the defendant preferred not to handle claims piecemeal and was waiting on forthcoming documents regarding additional claims. 454 Mich. at 271-73.  The Michigan Supreme Court found that the plaintiff proceeded at the direction of the defendant and for the defendant's convenience. The same is true here.

Moon Over Water, even if against its better judgment, submitted its bills at a lower rate in accordance with State Farm's request, applying State Farm's newly calculated per diem rate of approximately $515.  It did so until the Michigan Supreme Court's ruling in *Andary*, which clarified that medical costs for injuries sustained prior to the new fee cap were not to be capped.  Based on Moon Over

15

Water's affidavit and no real evidence to the contrary which could create a genuine issue of material fact, Moon Over Water reasonably relied on State Farm's assertion that it would only pay the capped amount for future bills and billed State Farm accordingly.

State Farm, however, argues that Moon Over Water acted on its "own mistaken understanding of the law" which "is not justifiable reliance." (ECF No. 30, PageID.653 (citing *Cincinnati Ins. Co.*, 454 Mich. at 269)). But that proposition comes from the lower court's statement in *Cincinnati Ins. Co.* On appeal, the Michigan Supreme Court rejected the proposition that a mistaken understanding of the law negates a finding of justifiable reliance. 454 Mich. at 270-73. Moreover, Moon Over Water was in fact *not* mistaken about the law; it correctly believed it was entitled to full, uncapped payment from State Farm, as the Michigan Supreme Court recently held. The record is clear; Moon Over Water only reduced its bill in response to State Farm's position and should not be required to abide by the lower rate based on State Farm's misapplication of the Michigan No-Fault Act.

### 4.    Additional Billing

Alternatively, even if State Farm is correct that Moon Over Water was never instructed to submit reduced bills from November 2021 to June 2022, the Court finds that State Farm would still be liable for the deficiency between Moon Over

16

Water's normal rate and the reduced rate it billed for that period.  Moon Over

Water agreed to send *additional* HCFA forms for what it says were unpaid services

from November 2021 to June 2022.  (ECF No. 28, PageID.549).  State Farm

obviously did not agree that it would pay those bills, otherwise the parties would

not be before the Court.  However, State Farm has not provided any authority to

support its position that once a bill is paid to a provider for a certain time period,

additional services that were not paid during that time are no longer owed.

Under M.C.L. § 500.3107(1)(a), personal injury protection (PIP) benefits are

payable for "allowable expenses consisting of all reasonable charges incurred for

reasonably necessary products, services, and accommodations for an injured

person's care, recovery, or rehabilitation."  An insured "incurs" an expense under

M.C.L. § 500.3107(1) when she becomes "liable" for it, which occurs when she is

"[r]esponsible or answerable in law" or "legally obligated" to pay that expense.

*Bombalski v. Auto Club Ins. Ass'n*, 247 Mich. App. 536, 543 (2001).  In other

words, an insured becomes liable for an expense when he accepts services for

which he (or his insurer) is being charged.  *Shanafelt v. Allstate Ins. Co.*, 217 Mich.

App. 625, 638 (1996); *see also Harris v. Auto Club Ins. Ass'n*, 494 Mich. 462, 468-

69 (2013).

State Farm argues that the burden is on Moon Over Water to establish

allowable expenses incurred, citing M.C.L. §§ 500.3105, 500.3107(1); *Manley v.*

*Detroit Auto. Inter-Ins. Exch.*, 425 Mich. 140, 169 (1986); and *Kondratek v. Auto Club Ins. Ass'n*, 163 Mich. App. 634, 637 (1987).  Regarding its burden, Moon Over Water notes that the Michigan Court of Appeals has "held that the plaintiff's letter setting forth the total bill for medical services and accompanied by a statement from the hospital constituted 'reasonable proof of the fact and of the amount of loss sustained' as required by MCL 500.3142(2)."  *Bronson Health Care Grp., Inc. v. Titan Ins. Co.*, 314 Mich. App. 577, 583-84 (2016) (citing *Williams v. AAA Michigan*, 250 Mich. App. 249, 267 (2002)).

Here, there is no colorable argument that the balance of the $900 per diem rate allegedly owed for services from November 2021 to June 2022, is unjustified. The relevant records show that State Farm paid that rate in full to Moon Over Water from at least July 2019 through October 2021, (ECF No. 28-6, 30-2), and reduced its payments in November 2021 based on either the new law or Moon Over Water's reduced bill, (*id.*).  From July 2022 onward, in the wake of the Michigan Supreme Court's ruling in *Andary*, Moon Over Water returned to billing its $900 per diem rate and State Farm paid the billed amounts in full.  There is no reason to believe that State Farm has any credible objection to that amount for November 2021 to June 2022, other than its belief that the amendments to the Michigan No-Fault Act capped the amount it was required to pay.

State Farm says that Moon Over Water never provided an itemized list of

services, as requested and reflected in the call log, to justify the $900 per diem rate. State Farm's log shows that this amount was discussed and even called into question during a review of the file on November 9, 2021. (ECF No. 30-2, PageID.677). It says that "it is unclear how $900/day is a reasonable rate." (*Id.*). The following day, State Farm requested that Moon Over Water "forward a breakdown of the $900/day rate and what is included." (*Id.*). However, on November 24, 2021, after receiving additional information from Moon Over Water, the $900 per diem rate was left unaltered based on services provided. (*Id.*, PageID.672-673). The rate was adjusted to $515.34 per day, "[b]ased on the fee schedule" from the amendments to the No-Fault Act. (*Id.*). The base rate of $900 per diem, to which the capping formula was applied, was not changed.

The Michigan No-Fault Act "requires only *reasonable* proof of the amount of loss, not exact proof." *Williams*, 250 Mich. App. at 267 (citing M.C.L. § 500.3142(2) (emphasis in original)). If State Farm "had desired to challenge or investigate the amount" billed by Moon Over Water, it "could have and should have conducted some investigation of its own during the thirty-day legislative grace period to establish a lesser amount of uncoordinated benefits owed." *Id.* Allowing State Farm to challenge the amount at this late stage "would contravene the purpose of the no-fault act to provide accident victims with assured, adequate, and prompt reparations by permitting an insurer to ignore definite but inexact

19

claims." *Id.* (citing *Celina Mut. Ins. Co. v. Lake States Ins. Co.*, 452 Mich. 84, 89 (1996)).

State Farm also argues that Moon Over Water billed for uninterrupted care during periods where the insured was hospitalized and thus not being cared for by Moon Over Water. (ECF No. 30, PageID.654). However, the periods State Farm points to range from January 1, 2023, to May 31, 2023. (*Id.*). This timeframe is not at issue in this case, which was filed in state court on August 31, 2022, to recover payments on bills from November 2021 to June 2022. (ECF No. 1-1). Periods of the insured's hospitalizations in 2023 say nothing about the amount of loss during the relevant period in this case. Therefore, even if Moon Over Water had not relied on State Farm's request to reduce its bills to the capped amounts, or if State Farm never made such a request, Moon Over Water would still be entitled to full payment in the amount it requests for the relevant period, including the additional requests on HCFA forms submitted in the course of this litigation.

In sum, Moon Over Water is entitled to summary judgment on its breach of contract claim under the Michigan No-Fault Act. State Farm is liable for the underpayment of the $900 per diem rate from November 2021 to June 2022.

### B.    Other Claims

" 'It is a general rule of law in Michigan that when a statute creates a new right or imposes a new duty having no counterpart in the common law the

remedies provided in the statute for violation are exclusive and not cumulative.' "
*Williams v. Farm Bureau Mut. Ins. Co. of Michigan*, 335 Mich. App. 574, 583, 967
(2021) (quoting *Ohlsen v. DST Indus., Inc.*, 111 Mich. App. 580, 583 (1981)).  The
Michigan No-Fault *abolished* "tort liability arising from the ownership,
maintenance, or use within this state of a motor vehicle" except for enumerated
exceptions that do not apply here.  *See* M.C.L. § 500.3135(3).

### 1.    UTPA

Regarding the UTPA, State Farm is correct that it does not apply to claims
governed by the Michigan No-Fault Act by its own terms.  *See* M.C.L. §
500.2006(6) (stating that its provisions do not apply to "any specific inconsistency
between this section and chapter 31," which is the Michigan No-Fault Act).
Further, the cases cited by Moon Over Water are not no-fault cases.  *See Griswold
Props., LLC v. Lexington Ins. Co.*, 276 Mich. App. 551, 559 (2007) (water damage
and fire loss); *Nickola v. MIC Gen. Ins. Co.*, 500 Mich. 115, 119 (2017)
(underinsured motorist coverage).[5]  Thus, the UTPA and its bad faith provisions do
not apply to State Farm's violations.  Accordingly, Moon Over Water cannot
recover on its claim under the UTPA.

---

[5] State Farm is also correct that the UTPA does not give rise to a private cause of
action.  *See, e.g.*, *Isagholian v. Transamerica Ins. Corp.*, 208 Mich. App. 9, 17
(1994); *Crossley v. Allstate Ins. Co.*, 155 Mich. App. 694, 697 (1986).  Its
provisions may apply to already existing causes of action, but as discussed, they do
not apply to actions under the Michigan No-Fault Act.

2.      Independent Tort Claims

Moon Over Water's tort claims fare no better.  As to tortious bad faith, as

noted above, tort liability was abolished by the Michigan No-Fault Act as to PIP

claims.  *See* M.C.L. § 500.3135(3).  Furthermore, as State Farm argues, Moon

Over Water cites no authority establishing an independent tort claim for bad faith

breach of contract in Michigan.  The authorities cited by Moon Over Water rely on

the UTPA to apply bad faith to insurance disputes, and the UTPA does not govern

no-fault claims.  Furthermore, Michigan courts have rejected independent tort

claims for bad faith breaches of insurance contracts.  *See Casey v. Auto Owners*

*Ins. Co.*, 273 Mich. App. 388, 401-02 (2006) ("An alleged bad-faith breach of an

insurance contract does not state an independent tort claim.") (citing *Roberts v.*

*Auto–Owners Ins. Co.,* 422 Mich. 594, 603-04 (1985); *Kewin v. Massachusetts*

*Mut. Life Ins. Co.,* 409 Mich. 401, 423 (1980)).  Thus, Moon Over Water cannot

sustain its independent tort claims against State Farm.

3.      MCPA

Finally, Moon Over Water argues that "[u]nder limited circumstances, the

Michigan Consumer Protection Act [M.C.L. § 445.901 *et seq*] applies to consumer

transactions and is therefore applicable to this dispute arising from a personal lines

insurance policy; this is not a commercial transaction to which the MCPA does not

apply."  (ECF No. 28, PageID.565).  But the Michigan Supreme Court and the

22

Sixth Circuit have explicitly rejected this view. *See Smith v. Globe Life Ins. Co.*, 460 Mich. 446, 465 (1999); *Liss v. Lewiston-Richards, Inc.*, 478 Mich. 203, 212 (2007); *McLiechy v. Bristol W. Ins. Co.*, 474 F.3d 897, 903 (6th Cir. 2007). "While most businesses are subject to the Michigan Consumer Protection Act, insurance companies are not to the extent that various provisions of the Michigan Insurance Code . . . regulate their conduct." *McLiechy*, 474 F.3d at 903. This claim is therefore denied. Moon Over Water may proceed only on its claims as governed by the Michigan No-Fault Act.

## C.    Interest and Attorneys' Fees

Moon Over Water argues that it is entitled to interest under M.C.L. § 500.3142(3) for payments that State Farm failed to make within thirty days after receiving Moon Over Water's bills, as required under M.C.L. § 500.3142(2). (ECF No. 20, PageID.169-170). It also says it is entitled to attorneys' fees under M.C.L. § 500.3148(1) because the charges were unreasonably denied. (*Id.*, PageID.170-171). State Farm counters that it is not liable for interest or attorneys' fees because the amounts it owed were never overdue. It further says that its initial decision that Moon Over Water was subject to the fee cap amendment was reasonable, and thus attorneys' fees are not warranted.

### 1.    Statutory Interest

Interest accrues on overdue benefits under the Michigan No-Fault Act.

M.C.L. § 500.3142(4).  In general, benefits are overdue if not paid within 30 days of the insurer's receipt of reasonable proof of the fact and amount of the loss. M.C.L. § 500.3142(2).  But under M.C.L. § 500.3142(3), if a bill is not provided to the insurer within 90 days after the service is rendered, the charge is not overdue if paid within 90 days.

Because State Farm paid Moon Over Water's bills in the full amounts—even though reduced bills were submitted—Moon Over Water is not entitled to interest under the No-Fault Act from the time those bills were sent.  However, during settlement negotiations, Moon Over Water agreed to submit HCFA forms for the delinquent amounts from November 2021 to June 2022, and did so on August 23, 2023.  (ECF No. 27-8).  State Farm has proffered no legitimate reason for not paying those requests.  It avers that it had already paid for those months' services in full, but cannot reasonably dispute the full $900 per diem rate for those months as explained above.  As State Farm was eventually billed for the balance of the $900 rate on August 23, 2023, interest under the No-Fault Act accrues from that date to whenever State Farm satisfies the judgment amount.

## 2.    Attorneys' Fees

Under the Michigan No-Fault Act, a reasonable attorneys' fee is allowed where (a) a payment for the claim is authorized under the Act, and (b) a payment for the claim is overdue.  M.C.L. § 500.3148(1).  The Michigan Supreme Court has

held that "attorney fees are payable only on overdue benefits for which the insurer has *unreasonably* refused to pay or *unreasonably* delayed in paying." *Moore v. Secura Ins.*, 482 Mich. 507, 523 (2008) (quoting *Proudfoot v. State Farm Mut. Ins. Co.*, 469 Mich. 476, 485 (2003)) (emphasis added). "[T]he inquiry is not whether coverage is ultimately determined to exist, but whether the insurer's initial refusal to pay was reasonable." *Shanafelt v. Allstate Ins. Co.*, 217 Mich. App. 625, 635 (1996). Further, "a delay is not unreasonable if it is based on a legitimate question of statutory construction, constitutional law, or factual uncertainty." *Id.* (citing *Liddell v. DAIIE,* 102 Mich. App. 636, 650 (1981)).

Here, State Farm did not act unreasonably in its interpretation of the Michigan No-Fault Act amendments. State Farm's position was shared by a dissenting judge in the Michigan Court of Appeals, as well as dissenting Michigan Supreme Court justices, in the *Andary* opinions. Furthermore, although the Court has rejected its position that it has paid Moon Over Water's bills in full, State Farm's position is not unreasonable. Therefore, under the precedents set by Michigan courts, Moon Over Water is not entitled to attorneys' fees for State Farm's delayed and, as of yet unpaid bills.

## VI.    Conclusion

For the reasons stated above, Moon Over Water's motion for summary judgment, (ECF No. 20), is GRANTED on its breach of contract claim under the

25

Michigan No-Fault Act and DENIED on its other claims based on independent torts, the UTPA, and the MCPA.  State Farm's motion for summary judgment is DENIED on Moon Over Water's breach of contract claim, and GRANTED as to Moon Over Water's other claims.

Interest shall be awarded for the payments due for services rendered from November 2021 to June 2022 from the date Moon Over Water submitted supplemental bills on August 23, 2023, to the date they are paid.

**On or before April 26, 2024, the parties must submit their joint (or competing) calculation of the amount of the judgment plus interest that is due consistent with this opinion.**

SO ORDERED.

Dated: March 27, 2024                         s/Kimberly G. Altman____
Detroit, Michigan                             KIMBERLY G. ALTMAN
                                              United States Magistrate Judge


### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 27, 2024.

                                              s/Carolyn Ciesla____
                                              CAROLYN CIESLA
                                              Case Manager